(717 P.2d 1059)

No. 57,804

JEWELL MAHAN, *Appellee*, v. HERB MASCHNER, *et al., Appellants.*

Opinion filed April 24, 1986.

*Charles Simmons* and *Larry Cowger*, of Department of Corrections, for the appellant.

*Ruben Jorge Krisztal*, of Krisztal & Bellen, of Leavenworth, for the appellee.

Before REES, P.J., PARKS and BRAZIL, JJ.

PARKS, J.: This action arose out of a petition for writ of habeas corpus filed by petitioner, Jewell Mahan, an inmate at the Kansas State Penitentiary (KSP). The district court granted the relief sought by the petition and respondent prison officials appeal.

Petitioner started a subscription to the magazine "High Times" in the fall of 1983. He received the first three issues of the monthly magazine but no other issues were delivered through the prison mail room. Petitioner wrote the subscription department of the magazine about the missing issues and was assured that the magazine was being sent. Eventually, petitioner

discovered that the magazine's delivery was prohibited by prison authorities because the periodical is concerned with drugs and drug use. Petitioner filed a petition for writ of habeas corpus requesting the court order KSP to stop interfering with delivery of the magazine.

The district court held an evidentiary hearing to hear testimony in support of respondent's contention that the censorship of the magazine was justified. A copy of the magazine was entered into evidence and two KSP employees testified concerning the magazine's content and its possible impact on the prison community. After taking the case under advisement, an order was prepared reflecting the conclusion of the district judge that petitioner was entitled to receive "High Times" without any interference or censorship by KSP. The respondents then filed their appeal from this order. At oral argument, petitioner waived argument and conceded that the appeal was timely filed.

A prisoner may use a petition for writ of habeas corpus to challenge the legality of the conditions of his confinement and to seek equitable relief from those conditions. *Foster v. Maynard*, 222 Kan. 506, 512, 565 P.2d 285 (1977). While ordinarily conditions of confinement relate to mistreatment in the context of living conditions and disciplinary measures, alleged violations of First Amendment rights have been found to fall within the scope of conditions which may be challenged by habeas corpus. *Wright v. Raines*, 1 Kan. App. 2d 494, 499, 571 P.2d 26, *rev. denied* 222 Kan. 749 (1977), *cert. denied* 435 U.S. 933 (1978). Moreover, it has been held that, even though imprisoned, inmates are still guaranteed the right to free speech. This right may only be infringed as an incident of imprisonment when it is demonstrated that the infringement will further the substantial governmental interests of security, order or rehabilitation of inmates and that the infringement is no greater than necessary. *Procunier v. Martinez*, 416 U.S. 396, 40 L. Ed. 2d 224, 94 S. Ct. 1800 (1974). In short, despite the exigencies of confinement, an inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. *Pell v. Procunier*, 417 U.S. 817, 822, 41 L. Ed. 2d 495, 94 S. Ct. 2800 (1974). Therefore, while prison authorities are ordinarily given wide discretion in the internal management of prison matters, the

censorship or restriction of inmate mail must be able to pass constitutional muster.

Both *Pell* and *Martinez* involved some type of direct, personal correspondence with inmates rather than the right of inmates to receive the more general communications of a periodical. However, subsequent federal cases have held that the same type of constitutional scrutiny must be applied to the censorship of magazines as is applied to limitations on correspondence. *Guajardo v. Estelle*, 580 F.2d 748, 760 (5th Cir. 1978); *Aikens v. Jenkins*, 534 F.2d 751, 755 (7th Cir. 1976). *Guajardo* stated as follows:

"There is also some question whether the *Martinez* rule is also applicable to the censorship of publications. See *Blue v. Hogan*, 553 F.2d 960, 963 n.4 (5 Cir. 1977). The Court in *Martinez* stated that its rule was dependent upon the first amendment rights of persons wishing to engage in direct, personal correspondence with inmates rather than the first amendment rights of the inmates themselves. Later Court opinions have indicated, however, that prisoners do retain those first amendment rights that are not inconsistent with their status as a prisoner or with the legitimate penological objectives of the correctional system. *Pell v. Procunier, supra*, 94 S.Ct. at 2804. Challenges to prison restrictions that are asserted to inhibit first amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system. *Id.* We think that *Martinez* and *Pell*, taken together, establish a rule that prisoners retain those first amendment rights not inconsistent with prison security, order or rehabilitation. *Cf. Jones v. North Carolina Prisoner's Labor Union, supra*." *Guajardo*, 580 F.2d at 760.

Therefore, assuming that the *Martinez* test does apply, the burden is upon the prison officials to prove that any restrictions on the right of an inmate to receive a certain magazine are in furtherance of substantial governmental interests of security, order or rehabilitation and are no more restrictive than necessary to secure those interests.

Here, the specific issues of "High Times" which were censored by the prison authorities were not introduced into evidence. Instead, a single issue of the magazine (August 1984 issue) was obtained by counsel and proffered as representative of the magazine. Thus, KSP did not simply seek to justify the censorship of the particular issues withheld from petitioner but to justify a general ban on the publication's receipt by any prisoner. In *Pepperling v. Crist*, 678 F.2d 787, 791 (9th Cir. 1982), a case involving a general ban of "High Times," the case was remanded because a copy of the magazine had not even

been put into evidence. However, the court noted that the blanket prohibition against receipt of a publication by any prisoner carries a heavy presumption of unconstitutionality. This is true because *Martinez* requires that any censorship measures taken be no more restrictive than necessary to preserve legitimate penological concerns. Since the wholesale banning of issues of a magazine not yet published would appear unlikely to be as least restrictive as possible, an even greater burden of proof is cast on the officials failing to carry out the censorship in a limited fashion.

The issue of "High Times" offered into evidence includes a variety of features and articles. There is an article on military involvement in drug law enforcement, a printing of the discussion which took place at a criminal law seminar about the ethics of undercover surveillance, and a report of the experiences of users of psychedelic drugs, both positive and negative. The magazine also includes tips on cultivating marijuana plants, short fiction and news items related to drug enforcement. The advertisements carried by the magazine are generally for products which may be used in cultivating and harvesting plants as well as seeds for growing hallucinogenic substances and literature on drug-related topics. Some of the letters to the magazine and shorter items reflect a reverential attitude toward various drugs but the articles and longer features do not advocate or encourage drug use. Many entries are fairly straightforward news reports or informational pieces.

The respondent's expert witness on prison security stated his general opinion that the magazine could cause security problems but he could not tie his conclusion to the specific contents of the issue in evidence. He testified that he had seen other issues which included smuggling tips which could be attempted in prison, but no such information was included in the issue in evidence. The other witness for the respondent gave his expert opinion that the contents of the issues of the magazine he had seen could have a negative effect on the rehabilitation efforts of an inmate who had a drug use problem. He did not state that petitioner had such a problem and acknowledged that petitioner had successfully completed the prison drug rehabilitation and information program despite the fact that he had previously received three issues of the magazine. The witness did not object

to the informational aspects of the magazine but felt that the positive comments about drugs in the publication could serve to reinforce drug using conduct.

Although the expert opinion of prison authorities concerning the demands of prison security, order and rehabilitation must be given proper deference, the testimony presented does not justify a blanket ban on the receipt of "High Times." Certain portions of the issue placed in evidence or subsequent issues might be adjudged to lead to security or rehabilitation problems but the majority of the magazine in evidence is innocuous, even banal. Accordingly, we agree with the conclusion of the trial court that the respondent failed to overcome the heavy presumption of unconstitutionality which accompanies its blanket ban on petitioner's receipt of all issues of "High Times."

Although the parties have argued this case with reference solely to the constitutional standards of inmate free speech recognized by our courts, Kansas, like most other states, has promulgated regulations and procedures to govern the censorship of inmate mail in accordance with the *Martinez* and *Pell* decisions. K.A.R. 44-12-601 distinguishes among legal mail, official mail, privileged mail and all other types of communication which may be received through the mail. Legal, official and privileged mail may not be read or censored and may only be opened in the inmate's presence for the purpose of removing contraband. Publications such as periodicals are subject to censorship according to the following provisions:

"(p) Publications.

(1) Inmates may receive books, newspapers, and periodicals except that inmates at the reception center for evaluation purposes may receive newspaper publications only.

(2) The procedures for censorship of mail listed in subsection (j) of this regulation shall be used for censorship of publications.

(3) Inmates shall have the option of mailing censored publications out of the facility at their own expense, or discarding them.

(4) Publications which are obscene or otherwise illegal, or which meet the test for censorship of mail in subsection (i) of this regulation, shall not be allowed into the facility.

(5) On transfer between institutions or facilities, the inmate shall arrange change of address for newspapers and periodicals."

K.A.R. 44-12-601(p).

## Subsections (i) and (j) state as follows:

"(i) All incoming or outgoing mail, other than legal, official or privileged mail,

may be inspected at any time. Such mail may be read and censored only when there is a reasonable belief that there is a threat to institutional safety, order or security, or to the safety and security of public officials or the general public, or when there is reasonable belief the mail is being used in furtherance of illegal activities. Such mail may also be censored if it is obscene and the addressee, or the responsible parent or guardian of an addressee who is a minor, has filed with the principal administrator a written complaint regarding previous correspondence and a request that future correspondence be stopped.

(j) In the event of any censorship of a communication to or from an inmate, the following procedures shall be conducted:

(1) The inmate shall be given a written notice of the censorship and the reason therefor without disclosing the censored material.

(2) The inmate shall be given the name and address of the sender of incoming mail or the addressee of outgoing mail and the date the item was received in the mail room.

(3) The author of that letter shall be given a reasonable opportunity to protest that decision.

(4) Complaints shall be referred to a prison official other than the person who originally disapproved the correspondence."

K.A.R. 44-12-601(i) and (j).

A number of federal cases considering the constitutionality of censorship regulations such as these have found the provisions permissible if the regulations provide for (1) appropriate notice to the inmate and sender of the publication, (2) a reasonable opportunity to challenge the initial determination that the publication should be censored, and (3) an ultimate decision by a disinterested party who was not part of the initial censorship determination. *Hopkins v. Collins*, 548 F.2d 503, 504 (4th Cir. 1977); *Aikens*, 534 F.2d at 755-57. While it appears that the Kansas regulations satisfy these procedural safeguards, no issue has been raised regarding their constitutionality since the evidence indicates that the KSP officials failed to follow their own regulatory procedure. According to the evidence, it was discovered that petitioner was receiving "High Times" after he had received three issues of the magazine. A decision was then made by some unidentified party to prevent further delivery of the magazine. The inmate was not given notice of the censorship decision nor was he permitted the opportunity to seek a review of the initial determination by some neutral party. Petitioner attempted to elicit a reason for the censorship from the prison authorities and was given a note stating that the magazine "is unauthorized at KSP—has to do with drugs." In short, there is no record from which it could be concluded that the KSP officials

engaged in the type of review or secured to petitioner the procedural protections specified by the regulations.

This failure to abide by the regulatory process does little to advance KSP's claim that its censorship decision was proper. Nevertheless, while we agree with the district court that KSP failed to carry its burden of showing that its censorship decision was constitutionally permissible and we further note that the prison officials failed to follow the procedures set out by regulation, we believe that the scope of the relief ordered by the court is overbroad. The district court ordered the KSP officials to refrain from any interference in the receipt of "High Times" by petitioner. However, there may well be future issues or portions of the magazine which may be censored without a violation of either the First Amendment or the prison regulations. Respondents should not be prohibited from taking future censorship measures which are both lawful and justified.

Finally, it should also be noted that the substantive test stated in K.A.R. 44-12-601 appears to place a greater burden on prison officials than is required by the Supreme Court's application of the First Amendment. According to the rule, censorship is only allowed if there is "a reasonable belief that there is a threat to institutional safety, order or security . . . ." This wording suggests the need for evidence of a present threat of harm and the likelihood that such harm would occur without the censorship. By contrast, *Martinez* indicated that no proof of a present threat of harm was necessary. *Martinez*, 416 U.S. at 414; *Blue v. Hogan*, 553 F.2d 960, 963 (5th Cir. 1977). Therefore, the future censorship decisions of prison officials should satisfy not only the dictates of the Constitution, but also the apparently stricter standard of the regulations. Accordingly, the trial court is directed to modify its order to allow the petitioner to receive the magazine uncensored unless the respondents find, after following the procedure and applying the test set out in the regulations, that complete or partial censorship of a particular issue of the magazine is merited.

Affirmed as modified with directions.