## Michael Shuttle v. Joseph Patrissi, Commissioner, Vt. Department of Corrections, et al.

[605 A.2d 845]

No. 90-316

Present: **Allen, C.J., Gibson, Dooley and Johnson, JJ., and Peck, J. (Ret.), Specially Assigned**

Opinion Filed February 14, 1992

128

*E.M. Allen*, Defender General, and *Jeffrey Dworkin* and *Seth Lipschutz*, Prisoners' Rights Office, Montpelier, for Plaintiff-Appellee.

*Jeffrey L. Amestoy*, Attorney General, Montpelier, and *Thomas J. Rushford*, Assistant Attorney General, Waterbury, for Defendants-Appellants.

**Allen, C.J.** The State appeals from an order of the superior court expunging defendant's conviction for violating a Vermont Department of Corrections (Department) disciplinary rule. The State argues that the court erred in (1) reviewing the conviction under the habeas corpus statute, and (2) finding the rule void for vagueness. We affirm.

Upon defendant's return from furlough to the St. Johnsbury Correctional Center, the Department gave him a breath test that revealed consumption of alcohol. The Department convicted defendant in July of 1989 of violating their rule "No. 10 Highest, Possession of, or use of alcohol, includes returning from furlough." As a result, defendant lost three days of statutory "good time." The effect of the conviction was to extend his incarceration by those three days. The Commissioner of Corrections denied defendant's administrative appeal on July 18, 1989. Defendant filed a complaint with the superior court for review of governmental action pursuant to V.R.C.P. 75 on June 1, 1990. The court denied Rule 75 relief because defendant had not filed the complaint within the required thirty days, but converted the complaint into a petition for a writ of habeas corpus. The court held that rule 10 was unconstitutionally vague and ordered the violation expunged from defendant's record, thereby restoring his three days of good time. As a result, defendant was immediately released from incarceration.

## I.

The State argues that the superior court lacked jurisdiction to review prison disciplinary measures under the habeas corpus statute. We disagree. We recognize, however, that whether to permit habeas corpus review when a defendant fails to avail himself of alternative avenues of review requires us to balance the liberty interests of inmates against the State's interest in maintaining the integrity of the judicial process.

The Vermont Constitution guarantees the broad availability of the writ: "The Writ of Habeas Corpus shall in no case be suspended. It shall be a writ issuable of right; and the General Assembly shall make provision to render it a speedy and effectual remedy in all cases proper therefor." Vt. Const. Ch. II, § 41. Additionally, 12 V.S.A. § 3952 provides: "A person imprisoned in a common jail, or the liberties thereof, or otherwise

restrained of his liberty by an officer or other person, may prosecute a writ of habeas corpus to inquire into the cause of such imprisonment or restraint, and obtain relief therefrom if it is unlawful." We have said that "[t]he purpose of the 'Great Writ' . . . is to guard against illegal restraints on liberty." *In re Stewart*, 140 Vt. 351, 359, 438 A.2d 1106, 1109 (1981).[1] Although originally limited to situations resulting in immediate release from incarceration, the availability of the writ has expanded to protect a broad range of liberty interests. *Id.* We hold that habeas corpus, when properly invoked by an inmate, provides a means of reviewing prison disciplinary measures that serve to prolong his period of incarceration.

Our ruling finds support in other jurisdictions. The United States Supreme Court has recognized the common-law authority for using habeas corpus to "remedy any kind of governmental restraint contrary to fundamental law." *Fay v. Noia*, 372 U.S. 391, 405 (1963). More recently, the Ninth Circuit noted the availability of habeas corpus to prisoners to review the denial of good time credits. *Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989). State courts similarly extend the availability of habeas corpus to prisoners to review prison disciplinary measures that result in the deprivation of liberty. See, e.g., *Williams v. State*, 461 So. 2d 1335, 1337 (Ala. Crim. App. 1984) (habeas corpus provides proper method for relief from deprivation of good time credits); *Schaffer v. Steinert*, 40 Conn. Supp. 251, 252, 490 A.2d 555, 556 (Super. Ct. 1985) (writ of habeas corpus is limited to challenges involving the legality of confinement or deprivation of liberty); *Mahan v. Maschner*, 11 Kan. App. 2d 178, 179, 717 P.2d 1059, 1060 (1986) (prisoner may use writ of habeas corpus to challenge legality of confinement).

The State points to New York, where that state's highest court held that prison disciplinary decisions must be reviewed through administrative grievance procedures rather than through habeas corpus petitions. *People ex rel. Dawson v. Smith*, 69 N.Y.2d 689, 690–91, 504 N.E.2d 386, 387, 512

---

[1] Although *Stewart* was decided under 13 V.S.A. § 7131, Vermont's post-conviction relief statute, the opinion discusses post-conviction relief and habeas corpus interchangeably. We noted that the post-conviction relief statute is a venue device, and was not designed to affect the availability of habeas corpus relief. *Stewart*, 140 Vt. at 356, 438 A.2d at 1108.

N.Y.S.2d 19, 20 (1986). We agree that review through administrative procedures, including those set forth in V.R.C.P. 75, is preferable. Unlike New York's Court of Appeals, however, we are unwilling to bar categorically an inmate's use of a habeas corpus petition in cases arising from prison disciplinary measures. Where, as here, Rule 75 review is unavailable and there is no evidence of a deliberate relinquishment of rights under Rule 75, habeas corpus provides an alternative means of protecting the liberty interests of an inmate whose incarceration is prolonged as a result of prison disciplinary measures.

██ The scope of review under habeas corpus is broad and is not limited to jurisdictional defects. *Stewart*, 140 Vt. at 356, 438 A.2d at 1107. "The court considering the petition is necessarily a trier of fact and . . . must determine what transpired [at the administrative hearing] in order to determine whether the imprisonment is unlawful." *LaRose v. Superintendent*, 146 Vt. 22, 24, 497 A.2d 30, 31 (1985). Finally, although we "regard the ancient writ with . . . homage, and . . . strive to keep it safe from abuse," we recognize "that the labeling of the desired relief sought is less important than its substance." *Unnamed Prisoners v. Maranville*, 154 Vt. 279, 282, 283, 576 A.2d 132, 134, 135 (1990).

██ We limit the availability of habeas corpus review as we strive to keep it safe from abuse. A habeas writ, intended to be a quick and summary proceeding for relief from illegal imprisonment, does not generally provide a substitute for appellate review. *Id.* at 283, 576 A.2d at 134. "The instances in which the writ is granted where there are remedies by appeal . . . are rare and of exceptional nature." *In re Rickert*, 124 Vt. 232, 236, 203 A.2d 602, 605 (1964). We have ruled that a writ of habeas corpus does not provide an alternative to an appeal from the trial court where a defendant deliberately waives an error on appeal to permit its assertion in a habeas corpus proceeding. *Berard v. Moeykens*, 132 Vt. 597, 600, 326 A.2d 166, 168 (1974). This rule, analogous to the former federal "deliberate bypass" rule announced in *Fay v. Noia*, 372 U.S. at 438–39, prevents defendants from gaining tactical advantage through the strategic manipulation of the judicial system.

Review pursuant to Rule 75, while not an appeal per se, is analogous to an appeal and provides the preferred means of

reviewing correctional center disciplinary proceedings. Mindful that inmates could intentionally forego Rule 75 relief to qualify for habeas corpus review unless we place limits on the availability of the writ, we hold that habeas corpus shall be unavailable where an inmate intentionally avoids Rule 75, either entirely or relative to an individual issue, to gain habeas corpus review. We can envision circumstances in which a defendant could gain advantage by intentionally foregoing Rule 75 review, which is generally quite narrow when the superior court reviews prison disciplinary hearings (see, e.g., *In re Nash*, 151 Vt. 1, 2, 556 A.2d 88, 89 (1988) (court looks merely for "some evidence" to support the decision)), for the current broad scope that habeas corpus provides. Under such circumstances, the trial court could properly exercise its discretion to deny a habeas corpus petition if it appeared that the inmate deliberately sought to gain a tactical advantage.

■ We find, on balance, that the superior court properly exercised habeas corpus jurisdiction in this case despite defendant's failure to properly pursue review in accordance with Rule 75. Defendant came to court challenging the legality of restraints on his liberty, and the court converted his Rule 75 action into a habeas corpus petition. The court properly responded to the substance of his request for relief rather than to its label. We need not determine whether an inmate could challenge, by a petition for habeas corpus, the loss of good time before he reached his release date because defendant was granted immediate release from incarceration as a result of the proceedings below. Furthermore, the State makes no claim that defendant deliberately delayed filing under Rule 75 to gain a tactical advantage, and our review of the record reveals no such strategy. We perceive no advantage for defendant in this particular case flowing from his failure to properly invoke Rule 75. Here, the scope of review would have been similar under Rule 75 because defendant challenged the validity of the disciplinary rule. Finally, we note that this application of the habeas corpus statute is especially appropriate given the minimal due process safeguards found in the prison disciplinary system. See *Cleavinger v. Saxner*, 474 U.S. 193, 203–04 (1985) (recognizing that prison disciplinary hearing officers were not independent, but rather biased employees under obvious pressure to resolve matters in favor of the institution).

## II.

The State assigns error to the superior court's finding that the Department's Rule No. 10 was unconstitutionally vague. That rule prohibits "[p]ossession of, or use of alcohol, includes returning from furlough."[2] We need not reach the constitutional issue because we find that the rule on its face did not prohibit the use of alcohol while on furlough. Because defendant's conduct, using alcohol on furlough, did not fall within the proscription of the rule, the court properly ordered that his conviction be expunged. We therefore affirm the judgment of the superior court although on different grounds than those stated in its support. See *Vermont State Colleges Faculty Federation v. Vermont State Colleges*, 151 Vt. 457, 463, 561 A.2d 417, 421 (1989).

*Affirmed.*

**Peck, J.,** dissents without opinion.

---

[2] The Department has subsequently changed the rule, which now clearly prohibits the use of alcohol by inmates on furlough.