NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 94

No. 2021-111

| | |
|---|---|
| Anthony Davey | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windsor Unit, |
| | Civil Division |
| | |
| James Baker | September Term, 2021 |

Robert P. Gerety, Jr., J.

Matthew F. Valerio, Defender General, and Annie Manhardt, Prisoners' Rights Office, Montpelier, for Plaintiff-Appellant.

Thomas J. Donovan, Jr., Attorney General, Montpelier, and Patrick T. Gaudet, Assistant Attorney General, Waterbury, for Defendant-Appellee.

PRESENT: Reiber, C.J., Robinson,[1] Eaton, Carroll and Cohen, JJ.

¶ 1. **CARROLL, J.** Petitioner Anthony Davey appeals the dismissal of his habeas corpus petition filed after the Department of Corrections (DOC) revoked his community-reentry furlough status. Petitioner argues that DOC's procedural errors following his arrest, after he absconded from furlough for more than eighteen months, constitute a denial of his due process rights. He also contends that legislation governing appeals of community-reentry furlough revocations does not apply to him. While we agree that DOC's procedural errors raise legitimate

_____

[1] Justice Robinson was present for oral argument but did not participate in this decision.

concerns, petitioner did not avail himself of an appropriate alternative avenue to challenge DOC's decision regarding his furlough status. Therefore, we affirm.

¶ 2.    We review the trial court's dismissal order de novo, and we may affirm on any ground. Bock v. Gold, 2008 VT 81, ¶ 4, 184 Vt. 575, 959 A.2d 990 (mem.). A motion to dismiss may not be granted "unless it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." Wool v. Off. of Pro. Regul., 2020 VT 44, ¶ 8, 212 Vt. 305, 236 A.3d 1250 (quotation omitted). "On appeal, we assume as true the nonmoving party's factual allegations and accept all reasonable inferences that may be drawn from those facts." Murray v. City of Burlington, 2012 VT 11, ¶ 2, 191 Vt. 597, 44 A.3d 162 (mem.).

¶ 3.    With this standard in mind, the relevant facts are as follows. Petitioner was convicted of several counts of sexual assault in 2014. Petitioner is currently incarcerated, serving a sentence for which his minimum release date was March 30, 2017 and his maximum sentence is life. Petitioner was placed on community-reentry furlough status on April 5, 2017.[2] During the nearly two years petitioner was on furlough, he lived with his grandmother in Pownal and held a few jobs. He was subject to a curfew and a condition that he avoid places where children gather. Otherwise, petitioner was free to travel throughout the state.

¶ 4.    On March 6, 2019, petitioner failed to appear for a scheduled meeting with his parole officer. The parole officer called petitioner and petitioner did not answer. Petitioner was not home moments after curfew that night. The next day, petitioner missed a second phone call from his parole officer, and again was not home at his evening curfew. DOC placed petitioner on "absconded" status and issued a "Return on Mittimus" warrant for his arrest. DOC made no further

---

[2] DOC broadly defines community-reentry as "[a] furlough by which a sentenced offender is released to the community under supervision at or beyond their minimum release date." Vt. Dep't of Corr. Directive 410.02, Furlough Violations 2 [hereinafter Directive 410.02], https://doc.vermont.gov/sites/correct/files/documents/policy/correctional/410.02-Violations-of-FRCRPAF.pdf [https://perma.cc/D5G8-MSYE]; see also 28 V.S.A. § 723(a) (defining eligibility requirements for community-reentry furlough).

attempts to locate petitioner. The following week, petitioner was charged with escape from furlough in Bennington County. In June 2019, he was charged with failure to comply with the sex-offender registry.

¶ 5. Petitioner was arrested by U.S. Marshals on October 27, 2020. On that date, DOC provided petitioner with a notice of suspension (NOS) report. The NOS notified petitioner that he was charged with escape from furlough and that he would receive a hearing on the furlough violation no later than October 29, 2020. The next day, October 28, he was arraigned on the failure-to-register charge. The court imposed a $5000 bond, which petitioner did not post. Petitioner argues that he could have posted the bond but chose not to because he was also held on the escape-from-furlough violation.[3]

¶ 6. October 30 came and went without a hearing. Petitioner did not receive any communication from DOC regarding the lack of a hearing. On November 18, petitioner learned that he would be case staffed the next day.[4] Petitioner filed a grievance objecting to the case staffing given that he had not yet received a furlough violation hearing. DOC told him he was not being held on a furlough violation.

¶ 7. The case staffing went forward on November 19. As a sanction, DOC placed petitioner on "furlough interrupt" for one year and, on November 23, transferred him to a different facility to serve the one-year interrupt.

¶ 8. On February 17, 2021, DOC sent petitioner a new NOS charging him with "escaping" and disclosed that the date of the incident was—February 17, 2021. This NOS, issued nearly four months after petitioner's arrest, represented that the furlough violation hearing would

---

[3] The State dismissed the escape-from-furlough charge without prejudice on October 28.

[4] Case staffing refers to DOC's decision-making process regarding what measures are required to reduce the risk of re-offense, which include the length of incarceration and programming requirements prior to release (or re-release) into the community. Directive 410.02 at 11.

occur no later than February 20. Also on February 17, DOC provided a notice of hearing form to petitioner, informing him of a hearing on February 23 at 1:30 p.m. Again, the hearing date came and went with no communication from DOC.

¶ 9. The hearing finally occurred on February 24. Petitioner received no written notice that the hearing would take place that day. The hearing officer was unaware of the October NOS and the October notice of hearing form. Petitioner provided the officer with copies of both documents. Petitioner raised the four-month delay at the hearing. The hearing officer refused to consider the delay or any due process arguments. The officer returned from a ninety-minute off-the-record deliberation with a supervisor, found petitioner guilty of the furlough violation, and referred petitioner for case staffing. Petitioner appealed this decision to the district manager on the same day but received no immediate response.

¶ 10. Petitioner was case staffed for a second time on March 24, 2021, and again he was not informed of the case staffing. The March 24 case staffing affirmed the one-year furlough interrupt as a sanction and added that he be transferred to transitional housing at the end of the interrupt.

¶ 11. Petitioner pled guilty to the failure-to-register charge on March 26, 2021 and was sentenced to a term of zero to one year, to be served consecutive to his current sentence. On March 12, before the final case staffing, petitioner filed a petition for habeas corpus in the Rutland Civil Division.

¶ 12. The State moved to dismiss the petition arguing that 28 V.S.A. § 724, the statute providing the terms and conditions of community-reentry furlough, governed petitioner's appeal, that petitioner's delayed hearing was not grounds for release under a petition for habeas corpus, and that petitioner did not exhaust his administrative remedies. Petitioner countered that § 724 only provides for de novo review of furlough revocation decisions on the grounds that DOC "abused its discretion in imposing a furlough revocation or interruption for 90 days or longer." 28

4

V.S.A. § 724(c). He explained that in his view DOC does not have the "discretion" to deny a furloughee due process, and that § 724 is therefore not an appropriate avenue to address petitioner's due process claim. Petitioner argued that he did exhaust his administrative remedies when he raised the four-month delay at the February 24 hearing and appealed DOC's determination to the district supervisor the same day. Finally, petitioner argued that remaining on community-reentry furlough implicates a liberty interest, and that he was prejudiced by DOC's procedures subsequent to his arrest.

¶ 13.   The civil division granted the State's motion to dismiss. The court concluded that 28 V.S.A. § 724 provided an alternative avenue for petitioner's appeal because "nothing in [§ 724] . . . precludes [a court] from reviewing whether a due process violation occurred." The court also found that, even assuming petitioner's furlough status did implicate a liberty interest, DOC's procedural deficiencies did not violate petitioner's due process rights, and that petitioner's case did not present the kind of "extraordinary circumstances that would warrant substituting a habeas petition" for review under an available alternative.

¶ 14.   Under 12 V.S.A. § 3952, a "person imprisoned in a common jail, or the liberties thereof, or otherwise restrained of his or her liberty by an officer or other person, may prosecute a writ of habeas corpus to inquire into the cause of such imprisonment or restraint, and obtain relief therefrom if it is unlawful." However, habeas relief "does not generally provide a substitute for appellate review." Shuttle v. Patrissi, 158 Vt. 127, 131, 605 A.2d 845, 848 (1992); see also LaRose v. Superintendent, Woodstock Corr. Ctr., 146 Vt. 22, 24, 497 A.2d 30, 31 (1985). Where there are remedies otherwise available, courts do not grant the writ except in " 'rare and [] exceptional' " circumstances. Shuttle, 156 Vt. at 131, 605 A.2d at 848 (quoting In re Rickert, 124 Vt. 232, 236, 203 A.2d 602, 605 (1964)). Petitioners may not gain a "tactical advantage through the strategic manipulation" of the courts by deliberately bypassing alternative remedies. Id.

5

¶ 15. Petitioner had an alternative avenue available to him when he filed a habeas petition in March 2021. The Legislature enacted several revisions to the statutes governing community-reentry furlough that went into effect on January 1, 2021. See 2019, No. 148 (Adj. Sess.), §§ 9, 10, 25. Section 724(c) is the operative provision in this case. Section 724(c) provides for appeals of offenders whose "furlough status is revoked or interrupted for 90 days or longer." 28 V.S.A. § 724(c). The section requires furloughees to appeal to the civil division "in accordance" with Vermont Rule of Civil Procedure 74. Id. Appeals on the record are reviewed de novo, though the court may accept additional evidence in its discretion. Id. Appellants bear the burden of proving that it was more likely than not that DOC "abused its discretion in imposing a furlough revocation or interruption for 90 days or longer." Id.

¶ 16. Petitioner does not dispute that he had been placed on community-reentry furlough and that his furlough status was subsequently interrupted for more than ninety days. Nor does petitioner dispute that he filed for habeas relief in March 2021, several months after the effective date of § 724(c). Thus, § 724(c) was an available alternative to challenge the revocation of his furlough status.

¶ 17. Petitioner, however, argues that even if § 724(c) was available when he filed his habeas petition, it was not an appropriate alternative because DOC has no "discretion" to deny him due process of law. We do not think § 724(c) is so limited, and we agree with the trial court that nothing in § 724(c) precludes a court from reviewing whether a denial of due process occurred.

¶ 18. We have said that "[d]ue process requirements apply to the procedures that must be used in reaching agency determinations . . . if they are adjudicative . . . in nature." In re Stratton Corp., 157 Vt. 436, 442, 600 A.2d 297, 300 (1991); see also Withrow v. Larkin, 421 U.S. 35, 46 (1975) ("[D]ue process . . . applies to administrative agencies which adjudicate as well as to courts." (quotation and citation omitted)). Courts may review agency adjudicative decisions for due process violations regardless of the standard of review. See, e.g., In re Villeneuve, 167 Vt.

6

450, 457, 709 A.2d 1067, 1071 (1998) ("[T]he board is a public administrative agency which must provide due process of law to [those] who appear before it. Thus, irrespective of the narrow standard of review, the court <u>must</u> vacate a board decision that is, like this one, based on a violation of due process." (emphasis added)); cf. <u>State v. Webster</u>, 165 Vt. 54, 56, 675 A.2d 1330, 1332 (1996) (noting broad discretion of trial courts in analogous context is limited "by the demands of due process").

¶ 19. Moreover, we will construe a statute to avoid "absurd or illogical results." <u>Jud. Watch, Inc. v. State</u>, 2005 VT 108 ¶ 16, 179 Vt. 214, 892 A.2d 191 (quotation omitted). It would be illogical to hold that § 724(c) only permits appeals of DOC determinations not involving allegations of due process violations. Such an outcome would require furloughees who wished to plead due process deprivations, in addition to challenging DOC's decision-making regarding their furlough status, to needlessly litigate in multiple proceedings. This makes little sense when judicial resources are ordinarily served best by "disposing of all issues involved in a [single] legal dispute." <u>Cupola Golf Course, Inc. v. Dooley</u>, 2006 VT 25, ¶ 10, 179 Vt. 427, 898 A.2d 134 (per curiam). Furthermore, the Legislature did not provide for such limited review in the statute. See <u>State v. Hale</u>, 2021 VT 18, ¶ 14, __ Vt. __, 256 A.3d 595 ("It is a well-settled principle of statutory construction that we will not read words into a statute that are not there."). And, to the extent it could have limited such appeals, the Legislature chose not to do so when it required appeals to proceed "in accordance with Rule 74." 28 V.S.A. § 724(c). Alleged due process violations are appealable under Rule 74. See, e.g., <u>Burch-Clay v. Taylor</u>, 2015 VT 110, ¶ 12, 200 Vt. 166, 130 A.3d 180 (appealing from motion for review under Rule 74 for denial of due process).

¶ 20. It is true that this Court has occasionally permitted habeas corpus review where petitioners did not use more appropriate alternative avenues. In such cases we have "balance[d] the liberty interests of inmates against the State's interest in maintaining the integrity of the judicial process." <u>Shuttle</u>, 158 Vt. at 129, 605 A.2d at 846-47. For example, in <u>Shuttle</u>, we affirmed a trial

court's conversion of the petitioner's untimely Vermont Rule of Civil Procedure 75 complaint into a petition for habeas corpus. Id. We said that where there is no evidence that a petitioner intentionally disregarded viable alternatives to gain a tactical advantage, it was within a court's discretion to do so. Id. at 132, 605 A.2d at 848. However, we were careful to "place limits on the availability of the writ" when we held that the writ "shall be unavailable where an inmate intentionally avoids Rule 75 . . . to gain habeas corpus review." Id. at 132, 605 A.2d at 848 (noting "broad" scope of habeas review is tactically preferable to Rule 75's "quite narrow" standard of review).

¶ 21. And even if we were to engage in a balancing test between petitioner's liberty interests and the State's interest in judicial process here, we would need to decide, for the first time, that inmates appealing from decisions regarding their community-reentry furlough status do, in fact, possess a liberty interest in remaining on furlough. Compare State v. Powers, 2016 VT 110, ¶ 16, 203 Vt. 388, 157 A.3d 39 (noting for purposes of Miranda warnings, "the restraints on a defendant's individual liberty associated with his conditional-reentry status are significant . . . [and] go to the liberty interests of a furloughed prisoner") (quotation and citation omitted), with Heim v. Touchette, No. 2019-288, 2020 WL 1695406, *2 (Vt. Apr. 3, 2020) (unpub. mem.) https://www.vermontjudiciary.org/sites/default/files/documents/eo19-288.pdf [https://perma.cc/L928-U8S4] (declining to decide whether furloughee had liberty interest in remaining on community-reentry furlough). We need not decide the question now because petitioner had a viable alternative to challenge his furlough interruption, whether he enjoyed a liberty interest in his furlough or not. Nor do we address petitioner's argument—raised for the first time on appeal— that § 724 cannot suspend the writ of habeas corpus. State v. Ladue, 160 Vt. 630, 631, 631 A.2d 236, 237 (1993) (mem.) (refusing to review argument "raised for the first time on appeal"). Likewise, we do not review for plain error petitioner's claim that the trial court unconstitutionally suspended the writ of habeas corpus, a request he raises for the first time in his reply brief.

8

Robertson v. Mylan Lab'ys, Inc., 2004 VT 15, ¶ 2 n.2, 176 Vt. 356, 848 A.2d 310 ("We need not consider an argument raised for the first time in a reply brief.").

¶ 22. Notwithstanding our conclusion that petitioner had an alternative avenue to challenge DOC's revocation of his furlough, we must address DOC's troubling procedural actions in this case. The facts petitioner alleges—many of which the State does not dispute—reveal a bureaucracy that comes very close to the sort of "procedural mockery" we have previously warned against. Rutz v. Essex Junction Prudential Comm., 142 Vt. 400, 413, 457 A.2d 1368, 1374 (1983) ("Repeated willful or careless disregard for regulations by the very authorities who make them would be a procedural mockery with which we will not be in sympathy."). The significant number of trial court decisions petitioner cites as evidence of DOC's history of deficient procedural processes does little to instill confidence in that agency's application of its own rules. DOC must do better for the persons subject to the rules it alone promulgates and administers.

Affirmed.

FOR THE COURT:

_____

Associate Justice