FREDERICK RAYMOND'S ADMX. *v.* RUTLAND RAILWAY, LIGHT
& POWER COMPANY.

May Term, 1916.

Present:   MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed October 9, 1916.

*Expert Testimony—Safety Devices—Attorneys as Witnesses—*
*Interest in Subject Matter of Suit—Instructions to Jury—*
*Exceptions—Negligence—Duty of Electric Light Company*
*to Use Care to Prevent Injuries to Persons on the Street—*
*Contributory Negligence.*

In an action brought to recover damages for the death of the plaintiff's
intestate, caused by an alleged insufficiency of a safety device for
securing the defendant's arc light, which allowed the light and
wires connected therewith to fall, the testimony of an expert elec-
trical engineer as to safety devices in general and common use in
the locality, was properly received in evidence.

An attorney who takes the witness stand must submit to the rule that
all circumstances calculated to create bias, prejudice or zeal on
the part of a witness may be inquired into; and if, to show his full
interest at a material time, it is necessary to show that he repre-
sents an insurance company, with whom the defendant carries
liability insurance, there is no rule of law that prevents such
relation being shown, but good faith is required in making the
inquiry.

In an action to recover damages for the death of plaintiff's intestate
caused by the alleged insufficiency of the safety device for secur-
ing the defendant's arc light, which allowed the electric wires to
fall, an instruction that if the deceased just before the accident
undertook to light the lamp by taking hold of the suspension cable,
and shaking it, the plaintiff could not recover, was properly re-
fused, because it denied recovery whether or not anything re-
sulted from the shaking.

A request that if the deceased interfered with the defendant's lamp in
any manner, he could not recover, was properly denied for the
same reason.

A request that if the method of suspending the lamp, used by the de-

fendant was sufficient to keep it from falling if not interfered with this was all the defendant was required to do, was properly denied.

A general exception to the charge to the jury, as to the subject matter of certain requests, will not be considered in Supreme Court.

In an action to recover damages for the death of the plaintiff's intestate, caused by coming in contact with the defendant's electric wires, the Court instructed the jury, that it was the duty of the defendant to so construct and maintain its wires and appliances in the street that no harm should come to the plaintiff's intestate, as he walked along the street that night, solely in consequence of the neglect of the defendant; that it was the duty of the defendant to construct and maintain its wires and appliances with the care and prudence of a careful man in the circumstances; that such care and prudence in a particular case must be commensurate with the circumstances that call for its exercise; that a person or corporation transmitting electricity over a street or sidewalk of a city for gain is bound to exercise such care and prudence to prevent injuries to travellers on the highway; that it was the defendant's duty to use this care in adopting generally known and used devices to fasten its wires so as to prevent travellers on the street from being injured; that if the defendant failed to discharge its duties as defined, and the death of the plaintiff's intestate resulted from such failure, without negligence on his part, the jury might find the defendant liable; but that whatever the negligence of the defendant, the plaintiff could not recover if her intestate was guilty of negligence that contributed in the least degree to the happening of the accident. *Held,* that the defendant had no ground to complain that the charge imposed on it any duty or burden not imposed by law.

An instruction that in determining whether the defendant used due care in securing its electric wires, the jury might consider that the defendant should take into account the acts of strangers and the public generally, was not error.

Where the plaintiff's intestate was killed by coming in contact with the electric wires of the defendant, the fact that he interfered with the defendant's arc light and attempted to light it by shaking its suspension cord, did not as a matter of law, make him guilty of contributory negligence, it not appearing that these acts were the proximate cause of the accident.

ACTION on the case to recover damages for the death of the plaintiff's intestate, caused by coming in contact with the electric wires of the defendant, brought under P. S. 2839, 2840, for the benefit of the widow and next of kin of the deceased. Plea, the general issue. Trial by jury at the September Term, 1915, Rutland County, *Stanton, J.,* presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*Ernest H. O'Brien* and *T. W. Moloney* for the defendant.

*Lawrence, Lawrence & Stafford* for the plaintiff.

HASELTON, J. The defendant owns and operates an electric lighting plant in Rutland and furnishes street lights under a contract with that city.

A little before seven o'clock in the evening of January 12, 1915, the plaintiff's husband, Frederick Raymond, came in contact with the defendant's wires on State Street and such contact caused his death.

The plaintiff is his widow and administratrix, and brought this action as administratrix for the benefit of the widow and next of kin.

Trial by jury was had and verdict and judgment were for the plaintiff. The defendant brings a bill of exceptions.

At a point on State Street, the defendant has an arc light suspended from a cross-arm attached to a pole. When the accident occurred the intestate and his wife were on State Street together.

The plaintiff's evidence tended to show that while they were walking side by side on the sidewalk, the arc light fell without any interference from the intestate, that wires carrying twenty-three hundred volts of electricity were broken by the fall and swung across the hands of the intestate which he had raised to ward off the wires, and that so he met his death.

The defendant's evidence tended to show that, as the plaintiff and the intestate were walking along, the intestate discovered that the arc light was not lighted, and that thereupon he stepped into the gutter and took hold of a cord used to raise and lower the light, that the cord slipped from his hand, and that in consequence the light came down and the wires that carried the

electricity from the main wires to the lamp pulled away from the arc light and fell across the sidewalk, that the intestate then took hold of the wires so that his body completed a circuit, and that so he was killed by the electric current.

The defendant claimed and its evidence tended to show that the intestate's purpose in taking hold of the cord referred to was to bring the carbons into contact and thus bring on the light.

A. C. Grover, a witness for the plaintiff, testified that he was a civil engineer, and that he made a plan of the pole and other things in its vicinity, January 19, seven days after the accident. He testified without objection about the depth and diameter of a certain hole in the pole. Then, under objection and exception, he described it more in detail. The defendant's objection was its understanding that the hole was made after the accident, and that the evidence was incompetent and immaterial. We take no time with the exception. Whether the hole was made before or after the accident, or was connected with the other things in evidence so as to make the evidence about it material, its general character and location were testified to without objection, and the part of the description received under objection and exception was so far as appears immaterial.

In this particular case, it appeared that the light was held in place by putting a ring, at the lower end of the suspension cord, over a lag screw driven into the pole.

Francis M. Morgan testified in behalf of the plaintiff as an expert electrical engineer. He testified that he had long been familiar with the equipment of electric light poles and lights for street lighting, and was familiar with the various safety devices that are in general and common use for securing arc lights, holding them in position.

He testified under objection that lag screws are not in common use for that purpose, and described and showed devices that were, and such devices were received under objection and exception. He testified that, the safety devices that he had explained were in general use in the locality of Rutland, meaning the locality within a radius of a hundred miles.

The testimony of Mr. Morgan, and the devices explained by him and introduced in evidence, were admissible.

An attorney for the defendant took the witness stand for the purpose of impeaching one Lassor, a witness in behalf of the plaintiff. Mr. Lassor had testified that he was just behind Mr.

and Mrs. Raymond at the time the arc light fell, and his testimony was of very great importance to the plaintiff. The attorney testified that after the hearing in this matter was had before the Public Service Commission, he had a conversation with Lassor in which the latter said that he was an important witness in favor of the plaintiff, needed money and would go away if he got it, would go to the Panama Exposition if he got the money, and asked the attorney to give him enough money to go to California.

In cross-examination the witness was asked if at the time of the conversation he was not attorney for the insurance company insuring the defendant against liability in cases like the one on trial. The witness said that he was attorney for the company, but didn't know just what its interest in the case was, had never seen its policy; that he supposed he was acting for the company at the time of the conversation, although without any instructions from the company; that he heard of the accident and was watching the hearing before the Public Service Commission to find out the facts; that he always put forth his best efforts for his clients' interest; that he was employed by an insurance company, but whether or not by this company he didn't know, had never seen its policy, was in the employ of the company generally, had been in its employ for fifteen years. Finally, being asked if the insurance company that he had referred to in his testimony was a company carrying liability insurance for the defendant in the case, the witness said he didn't know. Thereupon the witness was asked to give the name of the company and named two companies saying ''those are the companies I now appear for.'' In view of the testimony of the witness the cross-examining counsel, at this point, asked the defendant to produce the policies. Later Charles H. West an officer of the defendant was called by the plaintiff. Mr. West said that he did not have the insurance policies and could not produce them, but that the company carried liability insurance in one of the companies for which the attorney had said he appeared.

The testimony of the attorney, partly drawn out by the cross-examining counsel and in part by the court, and also the testimony of Mr. West was received under objection and exception.

The fact that a defendant carries liability insurance is not to be dragged into a case. But when the attorney took the witness stand to discredit an important witness in behalf of the

plaintiff, by giving his version of the conversation referred to, it became proper for the plaintiff to inquire fully into his interest in the matter. It did not appear that he was attorney for the defendant at the time of the conversation, and it was proper for the jury to know what his interest then was. For a biased mind may understand oral remarks in a sense not intended by the one who makes them.

The inquiry relating to this matter of interest was, as the narrative shows, somewhat prolonged, but that prolongation, if the inquiry was to lead anywhere, was necessitated by the answers of the attorney.

The plaintiff's witness Lassor had been asked by the defendant about this conversation, and had denied it outright, and so the question of who was right was in issue, and the case of *Shea* v. *Hillsborough Mills,* (N. H.) 96 Atl. 293, cited by the defendant is not in point. Neither is any other case cited by the defendant. A party is entitled to find out the full interest of a witness who testifies against him, and all the circumstances calculated to create bias, prejudice or zeal on the part of such witness may be inquired into. *Machine Co.* v. *Batchelder & Co.,* 68 Vt. 430, 35 Atl. 378; *Esterbrook's Will,* 83 Vt. 229, 238, 75 Atl. 1; *Mears* v. *Daniels,* 84 Vt. 91, 98, 78 Atl. 737.

An attorney who is a witness must submit to the rule, and if, to show his full interest at a material time, it is necessary to show his relation to an insurance company interested in the case on trial, there is no rule of law that prevents such relation being shown. Good faith in the matter of showing such relation is required, and that is obvious here.

The defendant presented certain requests to charge that were not complied with, and excepted to such non-compliance.

We notice such exceptions so far as they are relied on in the defendant's brief. The first of these exceptions is to the refusal of the court to charge that if the deceased, just before the accident, undertook to light the lamp by taking hold of the suspension cable and shaking the lamp, as the defendant's evidence tended to show, the plaintiff could not recover. The court could not comply with this request for it denied recovery whether or not anything resulted from the shaking.

By the second and fourth requests the defendant asked for an instruction that if the deceased interfered with the lamp in any manner he could not recover. The court could not comply

with either of these requests for the reason pointed out in the consideration of the first request.

Of the third of these requests, it is sufficient to say that it embodied the proposition that if the method of suspending the lamp used by the defendant was sufficient to keep it from falling if not interfered with, this was all that the defendant was required to do. Interference from whatever source and however slight and casual was by this request, as matter of law, to absolve the defendant from all duty thereafter to the intestate. The defendant was not entitled to have such request complied with.

The defendant excepted to the charge of the court in respect to the subject-matter of some requests, but in accordance with a well established and wholesome rule, we notice no such general exceptions to the charge as given.

The defendant excepted to that part of the charge in which the court defined the legal duty of the defendant in the circumstances. The charge upon this point was not all embraced in one paragraph, but it was to this effect:

"That it was the duty of the defendant to so construct and maintain its wires and appliances in the street that no harm should come to the plaintiff's intestate, as he walked along the street that night, solely in consequence of the neglect of the defendant; that it was the duty of the defendant to construct and maintain its wires and appliances with the care and prudence of a prudent and a careful man in the circumstances; that such care and prudence in a particular case must be commensurate with the circumstances that call for its exercise; that a person or corporation transmitting electricity over a street or sidewalk of a city for gain is bound to exercise such care and prudence to prevent injuries to travellers on the highway; that it was the defendant's duty to use this care in adopting generally known and used devices to fasten its wires so as to prevent travellers on the street from being injured; that if the defendant failed to discharge its duties as defined, and the death of the plaintiff's intestate resulted from such failure, without negligence on his part, the jury might find the defendant liable; but that whatever the negligence of the defendant, the plaintiff could not recover if her intestate was guilty of negligence that contributed in the least degree to the happening of the accident."

We do not consider that the defendant has any ground to complain that the charge imposed on it any duty or burden not imposed by law.

The court charged that in determining whether the defendant used due care the jury might consider that the defendant should take into account the acts of strangers and the public generally.

To this part of the charge the defendant specially excepted. But it would be strange indeed if an electric light company could string its wires along a public street, without reference to the use of the street by the general public, which includes strangers, and without reference to natural and expected conduct of other users of the street besides the electric company. The court was not talking here about the conduct of the intestate, but about the duty of the defendant in hanging its wires and appliances in a busy and crowded thoroughfare.

The defendant argues that there was error in the charge as given upon the question of contributory negligence. It is doubted if this question is fairly raised by any exception to the charge as given, but it is closely interwoven with questions raised by exceptions taken.

The court told the jury that if the deceased undertook to light the lamp by taking hold of the suspension cord and shaking it, they might find from that, that he was guilty of contributory negligence; and that if he left the sidewalk and went out and interfered with the lamp, the jury might take such fact as evidence tending to show that he was guilty of contributory negligence.

The fault which the defendant, in argument, finds with these parts of the charge is that the jury were not bound by the charge to find that such things if done amounted to contributory negligence.

But they were not bound so to find, for the question still remained whether these acts, if done, were the proximate cause of the accident. And it was in close connection with these statements complained of, that the court told the jury that if the doings of the deceased, as they found them to be, contributed in the least degree to the accident he could not recover. The defendant's complaints about the charge on the subject of contributory negligence are not well-grounded.

The exceptions taken and relied upon have been sufficiently considered.

*Judgment affirmed.*