2004 VT 100

# Bette Mann and Kelley Mann v. Diane Levin

[861 A.2d 1138]

No. 03-394

Present: Amestoy, C.J.,[1] Dooley,[2] Johnson, Skoglund and Reiber, JJ.

Opinion Filed October 1, 2004

---

[1] Chief Justice Amestoy sat for oral argument but did not participate in this decision.

[2] Justice Dooley sat for oral argument but did not participate in this decision.

*Heather Rider Hammond* and *Robert F. O'Neill* of *Gravel and Shea*, Burlington, for Plaintiffs-Appellees.

*Christopher D. Roy* of *Downs Rachlin Martin PLLC*, Burlington, for Defendant-Appellant.

¶ 1. **Reiber, J.** In this appeal, we consider whether the trial court erred in interpreting the terms of a restrictive covenant that limited the "height" of any building on defendant Diane Levin's property to

that of a neighboring farmhouse. The trial court found that the covenant was intended as a scenic easement, and thus, it restricted buildings from exceeding the absolute elevation, or "ridge line," of the farmhouse. Because Levin's building exceeded the ridge line by approximately seven feet, the court granted permanent injunctive relief to plaintiffs Bette and Kelley Mann, and ordered Levin to reduce the height of her building. Levin appealed, arguing that the court erred in interpreting the covenant. We affirm.

¶ 2. Levin and the Manns own real property in Jeffersonville, Vermont. The property is located along Route 108, and it is surrounded by the mountain range that includes the Smuggler's Notch ski area and Mt. Mansfield. Levin acquired title to her property as follows. In 1994, Thomas Kontos subdivided property that he owned in Jeffersonville into three parcels, Parcels 1A, 1B, and 1C. In December 1994, he sold Parcel 1A, and a right of first refusal in Parcel 1B, to Levin and her then-husband, Doug Walker. The deed contained numerous restrictions, including the following covenant at issue in this appeal:

> The 7.8 acre parcel [(Parcel 1A)] and the 3.2 acre parcel [(Parcel 1B)] retained by the Grantors herein shall both be restricted for commercial or residential or light farming. Any building must be limited to height no greater than the adjoining farmhouse (2 ½ stories). Specifically, steel-sided warehouse-type facilities are excluded, along with mobile homes.

It is undisputed that the "adjoining farmhouse" referred to in the deed is the Mannsview Inn, a bed and breakfast owned and operated by the Manns.

¶ 3. In March 1999, Levin and Walker divorced, and they divided Parcel 1A into two lots. Walker retained approximately 3.05 acres, and quit-claimed the remaining 4.89 acres to Levin. Levin's quit-claim deed contained the building height restriction. In September 1999, Levin and Walker exercised their option to purchase Parcel 1B. Within "ten minutes" after purchasing the lot, Levin and Walker sold it to Demars Properties. In December 2001, after a failed development attempt, Demars Properties sold Parcel 1B to the Manns. Parcel 1B adjoins Walker's portion of Parcel 1A, which in turn adjoins Levin's property. The grade of Levin's property is at a higher elevation than that of the inn.

¶ 4. In the summer of 2001, Levin excavated her lot. She stripped the top soil and brought in numerous loads of fill. In August 2002, she

began construction of a building. During the construction process, she showed the Manns several drawings of her proposed building, and assured them that her building would comply with the height restriction in the deed. However, while Levin's building was being framed, and particularly after the roof trusses were added, Walker and the Manns became increasingly concerned that Levin's building would violate the height restriction. In October 2002, Mrs. Mann wrote Levin a letter expressing her concerns, as did Walker. Levin responded to Mrs. Mann by letter, asserting that her home complied with the restrictive covenant.

¶ 5. In December 2002, the Manns filed suit against Levin, alleging that she had violated the terms of the restrictive covenant, and seeking permanent injunctive relief. Levin filed a counterclaim, alleging that she had not violated the covenant, and that the Manns' claims were made solely to interfere with the construction on her lot. On December 11, 2002, the court held a hearing on the Manns' motion for a temporary restraining order and preliminary injunction. The court concluded that the covenant appeared to be ambiguous, and it ordered Levin not to increase the present height of her building pending a trial on the merits.

¶ 6. In February 2003, the court held a trial, and made findings on the record. The court found that the covenant was a scenic easement, and the uncontradicted evidence established that "height" referred to the ridge line of the inn. The court explained that the parenthetical reference to "2 ½ stories" was intended to identify the particular farmhouse to which the deed referred. Although the court found that Levin had attempted to frustrate the covenant, it could not establish the extent to which her building exceeded the inn's ridge line because the parties' experts, apparently using the same mathematical formula, had reached different results. To prevent future disputes, the court ordered the evidence to remain open so that the ridge line height could be conclusively established. The parties later submitted a joint expert report in which the experts agreed that Levin's building exceeded the inn's ridge line by 6.7 feet.

¶ 7. On April 30, 2003, the court held an additional factual hearing, and closed the evidence. At the hearing, the court rejected Levin's argument that her violation of the covenant was de minimis, or that a balancing of the relative hardships weighed in her favor. In response to the Manns' request, the court indicated that it would be agreeable to an order requiring Levin to present it with a compliance plan within thirty days, and to comply with the height restriction within sixty days

after the plan was filed. The court stated that it was prepared to order Levin to vacate the building until she complied with the restriction, and it would impose a fine of $500 per day for noncompliance.

¶ 8. In July 2003, the court issued a written order granting the Manns' request for a permanent injunction. The court reiterated its earlier finding that the height restriction in the deed referred to the ridge line of the inn. Because the evidence showed that Levin's building exceeded the ridge line by 6.7 feet, the court found that she had violated the restrictive covenant. The court noted that Levin had not contested the existence of the deed restriction or its applicability to her property in any of the underlying hearings. It thus rejected her assertion, raised for the first time in her proposed findings, that the Manns lacked standing to enforce the covenant under the doctrine of merger. The court also rejected Levin's argument that the Manns were barred from enforcing the covenant under the doctrine of equitable estoppel. The court explained that Levin had received repeated advice that her home, then under construction, would exceed the height restriction.

¶ 9. The court ordered Levin to present it with a plan for reducing the ridge line elevation of her home no later than August 1, 2003, and to comply with the height restriction by September 1, 2003. The court stated that if Levin failed to comply with any of these deadlines, she would have to immediately vacate the premises and pay $500 per day until compliance was reached. The court granted Levin's request for a temporary stay of its order, and this appeal followed.

¶ 10. On appeal, Levin argues that the court erred in finding that her building violated the terms of the restrictive covenant. Specifically, she argues that: (1) the Manns lacked standing to enforce the covenant under the doctrine of merger; (2) the court erred in concluding that the covenant was ambiguous; (3) alternatively, even if the covenant is ambiguous, the court erred in finding that the parties intended to limit the height of any building to the ridge line of the inn; (4) the doctrines of equitable estoppel and laches prevent the Manns from enforcing the restriction; (5) the court failed to balance the hardships before granting injunctive relief; and (6) the court improperly imposed onerous prospective fines.

¶ 11. We first address Levin's assertion that the Manns lack standing to enforce the terms of the covenant under the doctrine of merger. Levin maintains that as of September 1999, she and her ex-husband held title to both Parcel 1A and 1B, which benefitted from and were

burdened by the height restriction. According to Levin, because there is no evidence that the height restriction was intended to continue in force beyond this merger of title, the height restriction was extinguished and it therefore cannot be enforced by the Manns. See *Albright v. Fish*, 136 Vt. 387, 395, 394 A.2d 1117, 1121 (1978) (discussing doctrine of merger).

¶ 12. Levin waived this argument by failing to fairly present it to the trial court. See *Bull v. Pinkham Eng'g Assocs.*, 170 Vt. 450, 459, 752 A.2d 26, 33 (2000) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal."). Contrary to Levin's assertion, she did not preserve this argument by pleading "lack of standing" as an affirmative defense in her answer to the Manns' complaint. She did not argue that the doctrine of merger applied during any of the underlying factual hearings. Indeed, her attorney stated at trial that no merger of title had occurred. As the trial court explained, each side presented their case with the concession that the deed restriction formed the controlling issue. We therefore conclude that Levin waived this argument, and we do not address it.

¶ 13. Levin next argues that the court erred in finding the covenant ambiguous. Relying on a dictionary definition of the word "height," Levin asserts that the covenant plainly prohibits the measured height of her building from exceeding the measured height of the inn, regardless of the respective elevations of the lots. Levin also argues that her building complies with the "2 ½ story" requirement found in the deed.

¶ 14. When the meaning of a restriction in a deed is clear and unambiguous, "there is no room for construction and the instrument must be given effect according to its terms." *Aiken v. Clark*, 117 Vt. 391, 393, 92 A.2d 620, 621 (1952). The trial court must determine, as a matter of law, whether an ambiguity exists. *Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 577, 556 A.2d 81, 83 (1988). In making this determination, the court may consider the circumstances surrounding the making of an agreement. *Id.* at 579, 556 A.2d at 84. An ambiguity exists when "a writing in and of itself supports a different interpretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations are reasonable." *Id.*; see also *Trs. of Net Realty Holding Trust v. AVCO Fin. Servs. of Barre, Inc.*, 144 Vt. 243, 248, 476 A.2d 530, 533 (1984) ("A provision in a contract is ambiguous only to the extent that reasonable people could differ as to its interpretation."). The question of whether an ambiguity exists is a

question of law, which we review de novo. *Kipp v. Chips Estate*, 169 Vt. 102, 107, 732 A.2d 127, 131 (1999).

¶ 15. The trial court did not err in finding the covenant ambiguous. The covenant requires that "[a]ny building must be limited to height no greater than the adjoining farmhouse (2 ½ stories)." The term "height" is not defined, and it is subject to more than one reasonable interpretation. While Levin relies on a dictionary definition to support her interpretation of the term, the Manns point to a different definition that supports their position. Moreover, notwithstanding Levin's argument to the contrary, it is not apparent from the language of the covenant that the parenthetical reference to "2 ½ stories" was intended to limit buildings to "2 ½ stories," regardless of height. Because we cannot say as a matter of law what the parties intended to prohibit under the covenant, we agree with the trial court that the covenant is ambiguous.

¶ 16. Assuming that the covenant is ambiguous, Levin next argues that the court erred in ascertaining the parties' intent. She asserts that, pursuant to the rules of deed construction, her interpretation of the covenant must prevail. According to Levin, the covenant was intended to limit buildings to the measured vertical height of the inn, regardless of the respective elevations of the properties. Levin maintains that the trial court's error in ascertaining the parties' intent is illustrated by the experts' difficulty in measuring the absolute elevation of her building and the inn. Finally, Levin asserts that, in determining the meaning of the covenant, the court committed reversible error by excluding evidence that demonstrated her ex-husband's bias and prejudice.

¶ 17. When a covenant is ambiguous, the question of what the parties intended to prohibit is a question of fact to be determined on all the evidence. *Kipp*, 169 Vt. at 107, 732 A.2d at 131. The court must "give effect to the intention of the parties if it can be gathered from the language used when interpreted in connection with, and in reference to, the subject matter and purpose sought to be accomplished at the time the instrument was executed." *McDonough v. W.W. Snow Constr. Co.*, 131 Vt. 436, 441, 306 A.2d 119, 122 (1973); see also *Kipp*, 169 Vt. at 105, 732 A.2d at 129 (same); *Welch v. Barrows*, 125 Vt. 500, 504, 218 A.2d 698, 702 (1966) ("The intention of the parties, not the language used, is the dominating factor, and the circumstances existing at the time of the execution of the deed, the situation of the parties and the

subject matter are to be considered."). We review the trial court's findings of fact under the clearly erroneous standard. Thus, we will uphold the court's factual findings unless, taking the evidence in the light most favorable to the prevailing party, and excluding the effect of modifying evidence, there is no reasonable or credible evidence to support them. V.R.C.P. 52(a)(2); *N.A.S. Holdings, Inc. v. Pafundi*, 169 Vt. 437, 438, 736 A.2d 780, 783 (1999).

¶ 18. In this case, the trial court found that the parties intended to create a scenic easement, and thus, the covenant restricted buildings from exceeding the ridge line of the inn. This finding is supported by credible evidence in the record. At trial, Walker testified that the height restriction had been added to the deed to increase the value of the property, which had dramatic views of the surrounding mountain range. Walker stated that the parties had identified the inn as the point over which no building could be built. Walker testified that the parenthetical reference to "2 ½ stories" was intended to identify the farmhouse to which the deed referred, not to impose a story-based height restriction. Kontos, the original grantor, testified that he had included the height restriction at Levin and Walker's request to facilitate the sale of the property. He understood the height restriction to refer to the ridge line of the inn. Like Walker, Kontos stated that the reference to "2 ½ stories" was intended to identify the farmhouse to which the covenant referred. The evidence thus supports the trial court's finding that the parties intended to limit the height of all buildings to the ridge line of the inn.

¶ 19. Levin relies on two rules of deed construction to support her argument that the word "height" must be construed to mean the measured vertical height of the inn. First, she argues that because she was a grantee of the deed that created the height restriction, the deed must be construed in her favor. See *Merritt v. Merritt*, 146 Vt. 246, 250, 500 A.2d 534, 537 (1985) (when wording of deed is subject to equally reasonable constructions, it must be construed against the grantor and in favor of the grantee). We find this argument unavailing. Rules of construction are subordinate aids used to discover the parties' intent. *Latchis v. John*, 117 Vt. 110, 112, 85 A.2d 575, 576 (1952). In this case, the only evidence as to the parties' intent was that testified to by Kontos and Walker; Levin testified that she could not remember having any discussions about the height restriction. Levin's suggested interpretation of the covenant was unreasonable, and the court did not err in rejecting it.

[5] ¶ 20. We similarly reject Levin's assertion that because restrictive covenants are to be construed in favor of the free use of land, her interpretation of the covenant must prevail. See *Fassler v. Okemo Mountain, Inc.*, 148 Vt. 538, 542, 536 A.2d 930, 932 (1987) ("When doubt arises as to the extent of restrictive covenants, the rule applied is that 'restrictions will not be extended by implication to include anything not clearly expressed, and doubts must be resolved in favor of the free use of land.'") (quoting *Latchis*, 117 Vt. at 113, 85 A.2d at 577). Levin argues that the court violated this rule of construction by ordering her to reduce the elevation of her home. We find this argument without merit. In interpreting the restrictive covenant, the trial court did not apply the height restriction by implication. Instead, the court found, based on the uncontradicted evidence, that the parties had intended the word "height" to impose an elevation-based restriction. The court did not "violate" this rule of construction by ordering Levin to comply with the terms of the restrictive covenant in her deed. The parties are bound by the terms of their agreement.

¶ 21. We are equally unpersuaded by Levin's argument that the trial court's error in ascertaining the parties' intent is illustrated by the difficulty encountered in determining the absolute elevations of the buildings. First, this argument is irrelevant to our review of the trial court's findings of fact. See, e.g., *Pafundi*, 169 Vt. at 438, 736 A.2d at 783 (trial court's findings of fact will be upheld unless clearly erroneous). Moreover, this argument is not supported by the record. The record shows that any "difficulty" encountered by the experts was the result of a mathematical error, which was later corrected. In their joint report, both experts agreed that Levin's building exceeded the ridge line of the inn by 6.7 feet.

¶ 22. Finally, we reject Levin's argument that, in ascertaining the parties' intent, the court committed reversible error by preventing her attorney from inquiring into Walker's "patent bias, prejudice and interest." Levin focuses on the court's exclusion of an October 2002 letter that Walker wrote to Levin. In the letter, Walker informed Levin that her building exceeded the height restriction, and he stated that he would sue her unless she either brought her home into compliance or paid him $50,000. Levin argues that this letter reveals Walker's bias, prejudice, and interest, and given the importance of Walker's credibility, the court committed reversible error in excluding it. In support of her argument, Levin relies on *Raymond v. Rutland*

*Railway, Light & Power Co.*, 90 Vt. 373, 378, 98 A. 909, 911 (1916) ("A party is entitled to find out the full interest of a witness who testifies against him, and all the circumstances calculated to create bias, prejudice or zeal on the part of such witness may be inquired into."), and *Estate of Holton v. Ellis*, 114 Vt. 471, 479, 49 A.2d 210, 217 (1946).

¶ 23. The record shows that on cross-examination Levin's attorney provided Walker with a copy of his letter, and asked him about its contents. When the Manns' attorney objected on relevancy grounds, Levin's attorney asserted that the letter would show Walker's bias, and it would also demonstrate the Manns' motive in bringing their suit. The court questioned the relevancy of this line of inquiry. Additionally, the court explained, it was unwilling to delve into the parties' divorce, and that was where the evidence appeared to be leading.

¶ 24. The court did not abuse its discretion in excluding this evidence. As we explained in *Ellis*:

> While a reasonable opportunity to show in cross-examination that a witness is unreliable, prejudiced, or biased is a matter of right, and much latitude is to be allowed in this line, the extent to which it shall be permitted to proceed rests largely in the sound discretion of the trial court . . . .

114 Vt. at 479, 49 A.2d at 217. In this case, the court was aware that Walker's property, like the property owned by Levin and the Manns, was both burdened and benefitted by the restrictive covenant. The court knew that Walker and Levin were divorced, and that the divorce was contentious. Indeed, Levin's attorney informed the court that Levin and Walker were "still duking it out" in family court, and that he didn't see the value of Walker's testimony because Walker had "a lot of axe to grind." Additionally, Levin testified that Walker had threatened to sue her if she did not abide by his wishes. The court acted within its discretion in concluding that any evidence relating to the Manns' alleged "motive" in bringing their suit, or any potential "bias" that the letter would have revealed, was unhelpful to the resolution of the issue before it. In addition, on the question of Walker's bias, we note that Walker's testimony was consistent with that of Kontos, the original grantor. Levin, in contrast, offered no evidence as to the parties' intent.

¶ 25. We turn next to Levin's assertion that the Manns should be precluded from enforcing the restrictive covenant under the doctrines of equitable estoppel and laches. According to Levin, the Manns waited until her building was already constructed before advancing the

position that "height" meant elevation despite being "invited" to comment on the building design earlier. Levin asserts that the Manns' delay in asserting their position was unreasonable, given that she was proceeding with substantial, expensive construction on her home.

¶ 26. Levin has not established that these equitable doctrines should apply. First, Levin did not plead laches as an affirmative defense in her answer to the Manns' complaint, nor did she raise this argument during the underlying factual hearings. She raised this argument for the first time in her proposed findings. The trial court did not address this argument, and we conclude that it was waived. See *Pinkham Eng'g Assocs.*, 170 Vt. at 459, 752 A.2d at 33. In addition, on the merits, this argument is not supported by the evidence. See *Ransom v. Bebernitz*, 172 Vt. 423, 433, 782 A.2d 1155, 1162 (2001) ("Laches is the failure to assert a right for an unreasonable and unexplained period of time when the delay has been prejudicial to the adverse party, rendering it inequitable to enforce the right. The delay must be unexcused and prejudicial.") (internal quotation marks and citation omitted). The record shows that the Manns immediately informed Levin of their concerns when it became apparent to them that her building would violate the covenant.

¶ 27. We find Levin's estoppel argument equally without merit. To establish equitable estoppel, Levin needed to show that: (1) the Manns knew the facts; (2) the Manns intended that their conduct be acted upon or the conduct was such that Levin had a right to believe it was so intended; (3) Levin was ignorant of the facts; and (4) Levin relied on the Manns' conduct to her detriment. See *Wesco, Inc. v. City of Montpelier*, 169 Vt. 520, 524, 739 A.2d 1241, 1244-45 (1999) (listing the elements of equitable estoppel). The trial court rejected Levin's estoppel argument after finding that she had been repeatedly advised that her home, then under construction, would exceed the height restriction. As discussed below, this finding is supported by the evidence.

¶ 28. At trial, Mrs. Mann testified that she initially believed Levin's representations that her building would not exceed the height restriction because she had no reason to believe otherwise. When it became apparent to Mrs. Mann that Levin's building would violate the covenant, she immediately expressed her concerns to Levin. Walker also informed Levin of his concerns during the construction process. While Levin argues that the Manns were aware of her proposed

method of measuring "height," the Manns testified that they had never measured the vertical height of the inn for defendant. It is the role of the trial court, not this Court, to determine the credibility of witnesses, and weigh the persuasiveness of the evidence. *Cabot v. Cabot*, 166 Vt. 485, 497, 697 A.2d 644, 652 (1997). Levin failed to demonstrate that the Manns should be estopped from enforcing the covenant, and the court did not err in rejecting this argument.

¶ 29. Levin next argues that the court erred by failing to balance the relative hardships before issuing an injunction that required her to reduce the height of her home. She asserts that the equities in this case clearly balance against the issuance of an injunction. This argument lacks merit. Because this case involves the enforcement of a restrictive covenant, no balancing of hardships was required. *McDonough*, 131 Vt. at 441, 306 A.2d at 122; *Welch*, 125 Vt. at 508-09, 218 A.2d at 705. As we explained in *McDonough*, "[b]asic to the enforcement of restrictive covenants is that they are enforceable through the equitable relief afforded by an injunction. Because the court is enforcing an established legal right, the relative hardships to the parties have no application to the award of final relief to the plaintiff." 131 Vt. at 441, 306 A.2d at 122 (internal citations omitted).

¶ 30. Levin argues that *McDonough* is distinguishable because she did not violate an "established legal right." She maintains that her interpretation of the covenant was reasonable, and she did not ignore the "clear terms" of the covenant in bad faith. Contrary to Levin's assertion, however, the trial court found that she had attempted to frustrate the terms of the covenant. More importantly, our holding in *McDonough* is not limited to "bad faith" violations of restrictive covenants. As we recognized in *McDonough*, one of the basic principles underlying the enforcement of restrictive covenants is that "he who takes land with notice of such a restriction will not in equity and good conscience be permitted to act in violation of the restriction." *Id.* Like the defendants in *McDonough*, Levin knew of the restrictive covenant in her deed, she knew of her neighbors' concerns about the height of her building, and she acted at her own risk in continuing construction without first obtaining a resolution of the covenant's meaning. See *id.* at 444-45, 306 A.2d at 124. Because Levin violated the restrictive covenant, the court was not required to balance the hardships before granting injunctive relief to the Manns.

¶ 31. Finally, Levin asserts that the court erred by imposing improperly onerous, prospective fines as part of its order. Levin complains that the court did not conduct a hearing to discuss the feasibility

of its permanent injunction, nor did it ascertain the appropriateness of the fine and other penalty provisions. She argues that none of the circumstances allowing for prospective, coercive fines, as set forth in *Vermont Women's Health Center v. Operation Rescue*, 159 Vt. 141, 151, 617 A.2d 411, 417 (1992), are present in this case.

¶ 32. To the extent that this argument was adequately raised below, we find it unpersuasive. In *Vermont Women's Health Center*, we recognized that although purely prospective fines are not favored in Vermont, "civil contempt fines may be imposed in an appropriate circumstance either to compensate complainants or as a coercive sanction." 159 Vt. at 151, 617 A.2d at 417. When a prospective fine is imposed as a coercive sanction, the fine "must be purgeable — that is, capable of being avoided ... through adherence to the court's order. Further, the situation must be such that it is easy to gauge the compliance or noncompliance with an order." *Id.* (internal quotation marks and citation omitted). Both requirements are met here. Levin can avoid the fines by complying with the court's order, and the court's order is specific as to what it requires of Levin.

¶ 33. As of February 2003, Levin was aware that her building violated the restrictive covenant. In April 2003, the court indicated that it would order her to present it with a plan for complying with the covenant, and that it would impose fines should she fail to do so. The court imposed these requirements in its July 2003 order. Levin had ample notice that she would need to develop a plan to reduce the height of her building. Given Levin's attempt to frustrate the covenant, and her ongoing violation of the covenant's terms, the court acted reasonably in ordering Levin to timely comply with its order, and imposing prospective fines to ensure Levin's compliance. We find no abuse of discretion.

*Affirmed.*