2006 VT 25

## Cupola Golf Course, Inc. and John Larkin v. John A. Dooley III and Sandra A. Dooley

[898 A.2d 134]

No. 05-081

Present: Barney, C.J. (Ret.), and Dier (Ret.), Martin (Ret.) and Maloney (Ret.), Supr. JJ., and McCaffrey, D.J. (Ret.), Specially Assigned

Opinion Filed April 14, 2006

*Liam L. Murphy* and *Pamela A. Moreau* of *Murphy Sullivan Kronk*, Burlington, for Plaintiffs-Appellees.

*Paul S. Gillies* of *Tarrant, Marks & Gillies*, Montpelier, for Defendants-Appellants.

¶ 1. **Per Curiam.** This litigation is about the protection of a view, in particular, the view from the living room windows of the home of defendants John and Sandra Dooley ("Homeowners"). Homeowners' lot slopes steeply from west to east. The street level of the residence, facing west on East Terrace Street, becomes the second-floor level of the residence. Homeowners' living room windows, located on this second-floor level, frame a view toward the east. Looking east from these windows, across the land owned by plaintiffs Cupola Golf Course, Inc. and John Larkin ("Developers"), one can see Interstate 89, shopping malls, and on the horizon, a panoramic view of the mountains centering on the Mt. Mansfield "profile."

¶ 2. Homeowners acquired this premises through a series of conveyances beginning with a deed from Roland and Evangeline DesLauriers to Borys and Frida Surawicz in 1956. Homeowners' deed contains the following restrictive covenant:

No building higher than one story shall be erected on any land of Grantor lying easterly of the land herein conveyed and lying in Green Mountain Park.

¶ 3. Homeowners' property is part of the Green Mountain Park Subdivision. The Subdivision was created by the DesLauriers from a parcel of land acquired by the DesLauriers from Fred C. Fisk in 1952. From 1952 until 1966, the DesLauriers sold lots in the Subdivision. All of these lots, including Homeowners' lot, were subject to general Subdivision-wide protective covenants. These general covenants imposed, among other things, a two-story height restriction on all lots in the Subdivision. These covenants were recorded in book 22, page 444 of the South Burlington land records, and are referenced in Homeowners' chain of title.

¶ 4. The DesLauriers sold approximately twenty-seven acres of land to Cupola Golf Course, Inc., one of the developers in this case. Approximately ten acres of the land acquired by Cupola Golf Course, Inc. was later sold to John Larkin, the other developer in this case. Developers' land is part of the Green Mountain Park Subdivision.

¶ 5. In 1978, Homeowners and other property owners within the Subdivision brought a petition for declaratory judgment against Cupola Golf Course, Inc., seeking to enforce the general Subdivision covenants as recorded in the South Burlington land records. After a ten year "languish," a declaratory judgment order was issued in 1989. This judgment specifically extinguished the general Subdivision-wide protective covenants. *Bingham v. Cupola Golf Course, Inc.* (C275-78CnC). Among the general covenants the court declared unenforceable was the two-story height restriction on all lots in the Subdivision.

¶ 6. Five years later, Developers brought an action seeking declaratory judgment against Homeowners to resolve the issue relating to the particular covenant in Homeowners' chain of title. Developers argued that the declaratory judgment in the *Bingham* case precluded enforcement of Homeowners' covenant because the order contained language that "all (other) claims and counterclaims are dismissed with prejudice." Specifically, Developers argued that this order operated to make Homeowners' particular covenant inoperative and void as a matter of res judicata. Among other claims, Homeowners argued that the issues raised did not yet reach the appropriate level of "case or controversy" required by declaratory judgment law. The trial court denied these and other preliminary

motions to set aside the covenant and proceeded to a hearing on the merits.

¶ 7. After taking evidence and conducting a site visit to view Homeowners' property, the trial court made findings and issued a declaratory judgment determining that the particular covenant in the original Surawicz deed, carried forward in the deed to Homeowners, is effective. The court determined that the term "easterly" in the specific covenant means due east. The court also determined that "no higher than one story" meant that any structure on the burdened land could be no more than one story, and that the one-story structure could be no greater than twenty-six feet in height. The declaratory judgment states that the covenant "impacts a strip of Developers' property east of Homeowners' property, as wide as Homeowners lot (approximately 100′) and heading due east." The judgment states that "[w]ithin this strip, no building will be built higher than 26 feet, and greater than one story, using the measurement standards set forth in the South Burlington Ordinance referenced in footnote 4." We affirm.

¶ 8. Developers argue that Homeowners' covenant was extinguished by the declaratory judgment issued in *Bingham* in 1989. As noted above, the *Bingham* court rendered null and void the general Subdivision covenants. Developers' contention focuses upon the following provision in the order: "Except as set forth above, all claims and counterclaims are dismissed with prejudice."

¶ 9. Based upon this language, Developers moved for summary judgment dismissing Homeowners' claim, arguing that the particular covenant contained in Homeowners' deed was extinguished by the 1989 declaratory judgment order, and that this claim is barred by res judicata. Developers raised further summary judgment issues, claiming that the covenant was voided by the Marketable Record Title Act, 27 V.S.A. § 601 et seq., as well as a change of circumstances, statute of limitations, waiver, laches and estoppel. The trial court denied Developers' motions on each of these bases.

¶ 10. Res judicata is a valuable doctrine of preclusion, founded upon the judicial economy and fairness of litigating and disposing of all issues involved in a legal dispute where the parties, subject matter and causes of action are identical or substantially identical. See *Lamb v. Geovjian*, 165 Vt. 375, 379-80, 683 A.2d 731, 734-35 (1996). However, in this matter we are dealing with a declaratory judgment proceeding, a special remedy with special concerns. The function of a judgment in such proceedings is to adjudicate and

define specific rights and liabilities of parties. A "declaratory action determines only what it actually decides and does not have a claim preclusive effect on other contentions that might have been advanced." Restatement (Second) of Judgments § 33 cmt. c (1982). Where, as here, the specific covenant was never presented to the trial court or decided upon, the judgment has no preclusive effect. Accordingly, the trial court correctly denied summary judgment on this issue.

¶ 11. The issue raised under the Marketable Record Title Act similarly fails because the existence of the special covenant was made known to the Developers within the forty-year span over which the statute operates. See 27 V.S.A. §§ 601-603.

¶ 12. The issues of waiver and estoppel raised by Developers are negated by the lack of showing of a duty to raise the issue and a lack of a concomitant right of the Developers to rely on the claimed failure to raise the issue. See *Mann v. Levin*, 2004 VT 100, ¶ 27, 177 Vt. 261, 861 A.2d 1138.

¶ 13. Developers failed to present sufficient evidence to support their contention that changes in the area and zoning compel denial of the covenant. The trial court's ruling on this issue is supportable. See *id.* ¶ 17 (citing V.R.C.P. 52(a)(2) for the proposition that this Court will uphold a trial court's factual findings unless, taking the evidence in the light most favorable to the prevailing party, and excluding the effect of modifying evidence, there is no reasonable or credible evidence to support them).

¶ 14. Turning to the declaratory judgment proceeding itself, the first prerequisite is that there be a real case or controversy. This requirement is jurisdictional. See *Town of Cavendish v. Vermont Public Power Supply Auth.*, 141 Vt. 144, 147, 446 A.2d 792, 794 (1982). Looking at the extended period of legal activity surrounding the properties involved in this case, this issue seems to have a simple answer. However, the judiciary is not empowered to render advisory opinions. Courts are not permitted to dispose of the merely hypothetical. An action for declaratory relief must be based upon an "actual controversy," the claimed result of which is "not based upon fear or anticipation," but is "reasonably to be expected." *Robtoy v. City of St. Albans*, 132 Vt. 503, 504, 321 A.2d 45, 46-47 (1974); see also *Town of Cavendish*, 141 Vt. at 147, 446 A.2d at 794. Thus, to avoid the probability of an advisory opinion, there must be a "case or controversy."

¶ 15. In this case, the trial court found that the dispute over the particular covenant has not been resolved, and that the determination of the meaning of the restrictive covenant is not premature. The court found that Developers have taken actions that manifest their intent to develop the land affected by the covenant. Developers have initiated the lengthy permit process. Although Developers have not yet put into place a formal development plan, the court noted that the pleadings sufficiently set forth Developers' proposal, and an alternative plan if the court found the covenant to be effective. The court further found that Homeowners would pursue whatever legitimate recourse they have to limit development. This is underscored by the efforts made by Homeowners to inform South Burlington Development Review Board that a decision on any plan of Developers should await a determination of the meaning of the covenant.

¶ 16. This, in conjunction with the history of the previous litigation, sufficiently satisfies the "case or controversy" requirement for jurisdictional purposes. As the trial court pointed out, it would be inequitable to perpetuate the uncertainties of the parties any further. The issues in this phase of the case have "languished" since 1994 and cry out for resolution and finality. Accordingly, the court's finding that this case is an actual controversy was certainly within the scope of the statutory purposes of 12 V.S.A. § 4722.

¶ 17. As noted above, the particular covenant in Homeowners' deed stated that "[n]o building higher than one story shall be erected on any land of Grantor lying easterly of the land herein conveyed and lying in Green Mountain Park." Developers argued that the court should construe the term "easterly" as imposing a burden on a strip of land the width of Homeowers' property, approximately 100 feet, extending straight out to the east from the eastern edge of Homeowners' property. Conversely, Homeowners argued that the term "easterly" encompasses a cone-shaped burdened area stretching from their house northeast to Mount Sterling and southeast to Bolton Mountain. Homeowners argued that this more expansive definition is necessary to effectuate the purpose of the covenant, which they argue was to protect a panoramic view of this mountain range.

¶ 18. After a merits hearing and a site visit of Homeowners' property, the trial court found that the language of the covenant is ambiguous because the covenant is subject to more than one reasonable interpretation. This Court agrees that the references to an

"easterly" direction and a height limit of "higher than one story" are sufficiently nonspecific to support resort to the intention of the original parties and the circumstances of the grant. See *Creed v. Clogston*, 2004 VT 34, ¶ 13, 176 Vt. 436, 852 A.2d 577. Thus, the trial court did not err in determining that the covenant was ambiguous.

¶ 19. Some of the original parties to the covenant are deceased; others have no clear recollection of the transactions. The trial court therefore looked to the surrounding circumstances at the time the instrument was executed to determine the intention of the parties, the subject matter and purpose of the covenant. See *McDonough v. W.W. Snow Constr. Co.*, 131 Vt. 436, 441, 306 A.2d 119, 122 (1973).

¶ 20. Developers argue that the covenant does not mention "view" even though the impact of all these proceedings seeks its protection. We agree with the trial court that protection of a "view" was implicit here. To preserve an open area above and across neighboring land is characteristic of a covenant related to a view. The term "easterly" is a very generalized description of direction. This description becomes more specific and meaningful when, as the court noted, almost due east, on the horizon, is the "profile" of Mt. Mansfield.

¶ 21. The deed does not specify the exact location of the covenant and its impact on Developers' land. There are no referenced monuments or markers. The trial court sought to determine the span of the covenant and its impact upon Developers' land. With the aid of testimony and a visit to the property, the trial court determined that the covenant burdened a 100-foot corridor of land to the east of Homeowners' property, the boundaries of which would be determined in relation to the 1956 magnetic east bearing. The trial court found that there was no evidence that the original parties intended the covenant to protect a view extending from Mount Sterling to Bolton Mountain. Rather, the trial court found that the purpose of the covenant was to protect a view of Mt. Mansfield, the closest and most prominent mountain in the view, as well as its central focus.

¶ 22. Homeowners seek a wider swath over Developers' land, but this construction would overlap with the Subdivision covenants that existed at the time of the original grant, covenants that were mentioned in the very same deed setting out this covenant. As the trial court found, it certainly is improbable that the parties granting this special covenant had any intent to supersede the Subdivision covenants, or to impose an alternative one-story restriction on all lots east of Homeowners' lot, regardless of their location in relation to

Homeowners' property. This determination is supported by reasonable and credible evidence, as well as sound logic. We see no error.

¶ 23. This Court also finds no error in the trial court's interpretation of the "one story" requirement to prohibit buildings higher than twenty-six feet or greater than one-story. The trial court correctly found that the pertinent question is what the parties would have considered one-story to mean in 1956. The court properly weighed the evidence in light of this standard. In any event, it is our understanding that the parties do not challenge the height definition if the Court affirms the trial court's ruling that the covenant is valid.

*Affirmed.*