**State of Vermont**
**Superior Court—Environmental Division**

========================================================================

## E N T R Y  R E G A R D I N G  M O T I O N

========================================================================

**Town of Fairfax vs. Leon Beliveau**                    **Docket No. 274-11-08 Vtec**
**(Municipal Enforcement)**

Title: Motion for Contempt (Filing No. 28)

Filed: December 19, 2011

Filed By: Plaintiff Town of Fairfax

Response filed on January 13, 2012 by Defendant Leon Beliveau

Reply filed on January 24, 2012 by Plaintiff Town of Fairfax

Supplemental Memorandum Filed on April 3, 2012 by Plaintiff Town of Fairfax

Response filed on May 25, 2012 by Defendant Leon Beliveau


  __X__  Granted                    ___ Denied                    ___ Other


This matter is an enforcement action brought by the Town of Fairfax (the Town) against Defendant Leon Beliveau (Defendant).  In a September 2, 2011 Decision in this matter, this Court determined that Defendant violated the Town of Fairfax Zoning Bylaws (the Bylaws) by changing the use of his owner-occupied property at 1166 Main Street from a single-family dwelling to a rooming and boarding house without first obtaining the necessary approvals. After the parties filed further memoranda on the extent and nature of injunctive relief, this Court issued an October 24, 2011 Injunctive Order requiring the following:

> Defendant Leon Beliveau shall immediately cease the use of the property at 1166 Main Street in the Town of Fairfax, Vermont, as a rooming and boarding house, as that term is defined in the Zoning Bylaws, and shall return the use of the property to that of a single-family dwelling, as that term is defined in the Zoning Bylaws, until or unless he obtains a zoning permit for the change of use from that of a single-family dwelling.

The parties then conducted supplemental discovery and filed memoranda regarding the Town's request for an enforcement penalty and permanent injunction.   On December 19, 2011, the Town filed a Motion for Contempt alleging that Defendant was not complying with the Court's October 24, 2011 Injunctive Order.

This Court then issued a March 30, 2012 Decision and Judgment Order imposing a penalty and repeating the above injunctive relief, this time as a permanent injunction.   Within the March 30, 2012 Decision, this Court recognized the Town's pending motion for contempt. To avoid confusion, however, the motion was not addressed within that decision.   This Entry Order addresses the Town's motion for contempt.

Defendant appealed the Environmental Division's March 30, 2012 Judgment Order to the Vermont Supreme Court on April 13, 2012. At the request of the Environmental Division, the Supreme Court placed the appeal on waiting status and remanded jurisdiction to the Environmental Division for consideration of the motion for contempt. A status conference was held with the parties on May 15, 2012 to establish a process to resolve the pending motion. Parties then filed additional memoranda, and a show cause hearing was held on July 18, 2012.

Section 122 of Title 12 of the Vermont Statutes Annotated provides for the initiation of contempt proceedings against any party who violates a court order, regardless of whether the case is currently active. See Vt. Women's Health Ctr. v. Operation Rescue, 159 Vt. 141, 144–145 (1992). Compensatory fines and coercive sanctions may be imposed on a civil contemnor; however, these must be purgeable, i.e., avoidable by adhering to the court's order. See Mann v. Levin, 2004 VT 100, ¶ 32, 177 Vt. 261 (citing Vt. Women's Health Ctr., 159 Vt. at 151); State v. Pownal Tanning Co., 142 Vt. 601, 603–604 (1983). Further, imprisonment can be imposed as a means to compel the party to do some act ordered by the court. See 12 V.S.A. § 123; In re Sage, 115 Vt. 516, 517 (1949). This Court is prepared to impose such fines or sanctions where a respondent ignores a court order.

The injunctive order at issue in this motion for contempt requires that Defendant cease the use of the property as a rooming and boarding house and return the use of the property to that of a single-family dwelling, unless Defendant obtains a zoning permit for a change of use. Thus, absent any permitting or approvals from the Town, to comply with this order, Defendant must do the following:

1) Cease use as a rooming and boarding house; and

2) Return use to that of a single-family dwelling.

Use as a Rooming and Boarding House:

The use category of rooming and boarding house is defined, in pertinent part, in the Bylaws as an "owner occupied residence." The parties' filings, and the testimony and evidence the Court received during the July 18, 2012 show cause hearing, indicate that the parties agree both that Defendant moved out of 1166 Main Street on October 25, 2011 and that Defendant no longer considers or uses this property as his residence. Based on these facts, the Court concludes that Defendant is in technical compliance with the first part of the injunctive order, as his use of the property no longer matches the definition of a rooming and boarding house.

We note that Defendant's method of complying with this aspect of the injunction, while legally sufficient, goes against the spirit and intent of the injunctive order. The Town in this matter is interested in Defendant either restoring use of the subject property to its previous use as a traditional single-family home or applying for and obtaining the necessary approval for a change of use. Defendant's moving out, without more, does not solve the Town's concerns. Nonetheless, we conclude that Defendant has legally complied with the first element of the injunction.

Return Use to that of a Single-Family Dwelling:

The injunctive order also requires that Defendant return the use of the property to that of a single-family dwelling, as that term is defined in the Bylaws. During the show cause hearing, Defendant argued that the injunctive order is unclear because it references a "single-family dwelling"—a use which is not clearly defined in the Bylaws. Defendant further argued that, because this is a request for contempt, the Court cannot undertake its usual interpretation of the order and municipal bylaw to find clarity. Defendant, therefore, suggests that we cannot find Defendant in contempt.

We do not agree that the injunctive order's reference to "single-family dwelling" is unclear. While the Bylaws do not define "single-family dwelling," they do define "dwelling," and within that definition, "family":

> A building designed or used as the living quarters for one or more families. There shall be no more than one family domiciled per dwelling unit. For the purposes of this definition, a "family" shall mean one or more persons living as a household unit, but not including individuals or groups occupying rooming and boarding houses, clubs, motels, or hotels.

Bylaws, Appendix B. Thus, to determine whether Defendant has complied with the injunctive order, we consider whether Defendant's use of the home involves "one or more persons living as a <u>household unit</u>." See <u>id</u>. (emphasis added).

This Court's September 2, 2011 Decision provided Defendant with additional clarity concerning the aspects or characteristics of living as a household unit:

> Persons living in a single-family dwelling live as a household unit, regardless of whether all or only some of the household members contribute money or services to the running of the household. Other jurisdictions that have addressed this issue have held that a single-family zoning regulation includes groups of unrelated persons living together in which the living arrangement is stable, permanent, and not for profit, and the people living together function in the same manner that a traditional family unit would function. See, e.g., <u>Appeal of Miller</u>, 511 Pa. 631, 638 (Pa. 1986) (holding that a single housekeeping unit is one in which a family residential setting is apparent, and excludes arrangements established primarily for profit); <u>Borough of Glassboro v. Vallorosi,</u> 117 N.J. 421, 431 (N.J. 1990) (holding that a group of unrelated persons living together as a single housekeeping unit must exhibit stability, permanency, and a functional lifestyle that is equivalent to a traditional family unit to satisfy a single family zoning regulation)….

Thus, to determine whether Defendant is complying with the injunctive order, we look to aspects of the use and nature of the living arrangements at the subject property, such as stability and permanence of people at the house, whether the living arrangements are for profit, and whether the people living together function as a traditional family unit.

Based upon the parties' filings, and the testimony and evidence that the Court received during the July 18, 2012 show cause hearing, we conclude that Defendant's use of the home has not changed since the October 24, 2011 injunctive order. After issuance of the injunctive order, Defendant did not change aspects of the physical layout of the home, ask the tenants to change or modify the way they used the home, or ask the tenants to change how they interacted with each other. Furthermore, Defendant has had approximately seven new tenants move into the house since issuance of the October 2011 injunctive order.

The physical layout and design of the house has not changed since the issuance of the injunctive order. Based upon the Town's November 14, 2011 inspection of the property, there are ten or eleven bedrooms, one kitchen, three private bathrooms (meaning they are directly and only accessible from a bedroom), and two public bathrooms. Most or all of the bedrooms have their own refrigerators and microwaves supporting independent living by separate tenants. The basement has two clothes washers and two dryers. The nature of the layout and design is strong evidence of a building designed for independent living, more like a dormitory than single-family home.

Furthermore, the evidence relating to how the property is currently being _used_ supports the conclusion that the tenants do not live as a household unit. One of Defendant's tenants, Mary Newman, testified that she rented a room at the property from August 2011 to November 1, 2011. During this time, Ms. Newman locked her room when she was not present. She explained that she kept all of her belongings in her individual room. This way of living is less akin to traditional single-family living and more akin to dormitory living. Ms. Newman collected her belongings and moved out of her room at the beginning of November 2011. At the time that Ms. Newman moved out, no other occupant was home, and, since then, she has not contacted nor had any dealings with any of the other occupants. Again, it is not typical for household members to move out of their house without saying goodbye and having no contact thereafter.

In response to the Town's questions during the show cause hearing, Defendant testified that all the ten or eleven bedrooms in the house are lockable from the outside and that he provides a key to tenants so that they can lock their individual rooms. This is not a typical aspect of a traditional single-family home. Defendant also testified that he does not go out to dinner with tenants, vacation with tenants, or shop for groceries with tenants. He stated that, when living at the property, he and his wife would, from time to time, host a bar-b-que for tenants or that his wife would cook a meal for everyone. Although the sharing of meals is a trait of single-family living, Defendant suggested that this act was infrequent at best.

When taken together, the evidence illustrates that Defendant does not use his property as a single-family house. We reach this conclusion based upon all of the evidence presented. While many of the uses discussed above, when taken individually, can exist in a single-family home, it is the totality of the evidence that leads to our conclusion that Defendant has not complied with the injunction because he has failed to return the property to single-family use.

Based upon the foregoing, the Town's Motion for Contempt is **GRANTED**, and it is **ORDERED** that:

1. Defendant has ceased the use of the property at 1166 Main Street in the Town of Fairfax, Vermont as a rooming and boarding house, as that term is defined in the Zoning Bylaws.
2. Defendant has NOT returned the use of the property to that of a single-family dwelling, as that term is defined in the Zoning Bylaws, nor has Defendant obtained Town approval for the change of use from that of a single-family dwelling.
3. On or before **October 24, 2012**, Defendant shall fully comply with the October 24, 2011 (and March 30, 2012) injunctive order by returning the use of the property to that of a single-family dwelling, as that term is defined in the Zoning Bylaws, or by obtaining Town approval for the change of use from that of a single-family dwelling.[1] To the extent that Defendant is unclear of the meaning or nature of single-family use, Defendant shall reference pages 9 and 10 of this Court's December 2, 2011 Decision and Order on Summary Judgment after Remand from Supreme Court (Sept. 2, 2011), which is quoted above.
4. Beginning on the date of this Order, and continuing until full compliance with the October 24, 2011 injunction is realized, Defendant is hereby sanctioned with a fine of $100.00 per day. This accumulating fine is fully purgeable upon timely compliance. For the fine to be purged, and thus for Defendant to avoid payment, full compliance with the injunction must be accomplished on or before **October 24, 2012.** Should Defendant fail to timely comply with this Order, the fine will become due on October 24, 2012, payable to the Town of Fairfax.
5. The Court **DENIES** the Town's request for reimbursement of its costs and fees in pursuing contempt. In the unfortunate event that further contempt actions are necessary due to Defendant not achieving full compliance with the injunctive order on or before October 24, 2012, however, the Town's requests for reimbursement of <u>all of its costs and fees relating to contempt</u> may be further considered.

| | |
|---|---|
| _____ | _____July 24, 2012_____ |
| Thomas G. Walsh, Judge | Date |

====================================================================
Date copies sent: _____                    Clerk's Initials _____
Copies sent to:

    John H. Klesch, Attorney for Town of Fairfax

    Peter J. McDougall and Robert S. DiPalma, Attorneys for Defendant Leon Beliveau

_____

[1] As the injunction potentially impacts tenants and their rights, we provide 90 days to allow Defendant sufficient time from the date of this order to comply.